IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DIANE TERESA JOHNSON,

    Plaintiff,

v.                                                    CASE NO. 5:14-cv-119-RS-GRJ

NF CHIPOLA LLC,

    Defendant.
_____/

## ORDER

Before me are Defendant's Case-Dispositive Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 34) and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 38).

Diane Johnson sued her former employer, NF Chipola, LLC, for race and gender discrimination, Family and Medical Leave Act ("FMLA") interference, and worker's compensation retaliation after she was terminated shortly after suffering a workplace injury. After review, I find that she has failed to produce sufficient evidence to support claims for discrimination or FMLA interference. I therefore grant Chipola's motion for summary judgment as to those claims and remand the worker's compensation claim to state court.

## I.    STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 , 91 L. Ed. 2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II.    BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts shall be resolved in favor of the non-movant. *Id.*

Plaintiff Diane Johnson, a black female, began working in 2005 as a certified nursing assistant for Defendant NF Chipola, LLC ("Chipola"), which operates a skilled nursing facility in Jackson County, Florida. (Doc. 38 at 1). At some times throughout her employment, Johnson worked restorative care; at others, she worked on the floor. (*Id.* at 1-2). In restorative care, her lunch break time was flexible and self-directed; while working on the floor, her lunch break time was assigned. (*Id.* at 2).

Johnson was injured on the job on September 18, 2011. (*Id.*). While responding to a patient's call, she fell and injured her left arm while attempting to tie her untied shoe. (*Id.*). She left work for the emergency room. (*Id.*). When she returned and completed the proper paperwork, her supervisors told her to use better judgment to avoid injury. (*Id.*). Johnson then was examined by Dr. John A. Spence, who prepared a report stating that she could return to work but with restrictions on her left arm and left leg. (*Id.* at 3). She could not perform certain tasks, move objects weighing more than ten pounds, or stand for more than 30 minutes at a

time. (*Id.*). His report included a form stating what duties he felt she could safely perform. (*Id.*).

Johnson was assigned to a variety of constantly changing light duty tasks. (*Id.*). After follow-up visits with Dr. Spence, each resulting in modified work restrictions, she was assigned to kitchen duty. (*Id.* at 3-4). Her hours were reduced from 40 per week to 32 and she had to work weekends. (*Id.* at 4). Johnson claims that the kitchen duty aggravated her arm, and that Dr. Spence had not authorized her to perform some of the tasks she was assigned. (*Id.*).

Johnson also claims that her supervisor, Connie Zuraff, was rude and hostile about the worker's compensation claim; she told Johnson she should not have reported a fall in the first place and suggested that the should have waited until she was off duty to seek medical treatment. Zuraff and other superiors began to supervise and scrutinize Johnson molre frequently after the injury. (*Id.* at 4-5).

On Friday, November 11, 2011, Johnson received a new job assignment. (*Id.* at 5). She was told that her schedule would be effective "starting the weekend," which she thought meant the following Monday. (*Id.*). Johnson thought, based on the information available to her, her years of experience with the facility, and the conditions in the condition, that she was clear to take a lunch break at 10:30 a.m., during the first lunch period. (*Id.* at 5-6). Chipola, however, claims it scheduled her

for the second 11:00 a.m. lunch period, and she never had permission to leave at 10:30 a.m. (Doc. 34 at 7-9).

When she returned from lunch at 11:02 a.m., Johnson was brought into Zuraff's office and indefinitely suspended. (Doc. 38 at 6). After an investigation, Johnson was terminated for the offense of "walking off the job." (*Id*. at 7).

Johnson points out that another employee, Brent Williams—a white male—also suffered an injury, but was assigned to folding laundry rather than working in the kitchen. Johnson also points out that two others employees, Mary Welch and Angela Edenfield—both white females—were not fired and did not receive the same kitchen duty work that Johnson did. Johnson also notes that Chipola failed to give her any information regarding her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

On February 3, 2014, Johnson filed suit in state court, alleging gender discrimination (Count I), race discrimination (Count II), FMLA violations (Count III), and workers compensation retaliation under state law (Count IV). Chipola properly removed to this court on the basis of federal question jurisdiction from Claims I, II, and III.

Chipola now moves for summary judgment.

### III.   DISCUSSION

####   a.   *Race and Gender Discrimination (Counts I and II)*

Johnson first claims that Chipola discriminated against her based on her race (black) and her gender (female) when she was assigned to kitchen duty and subsequently fired. Chipola argues that her claims fail as a matter of law because she has not proven a prima facie case, and because its valid reasons for terminating her were not pretextual.

Because Johnson has not produced any direct evidence of discrimination, she must do so using circumstantial evidence, and must provide enough evidence to prove a prima facie case. To prove a prima facie of race or gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 (11th Cir. 2000).

Prong (1) is satisfied, as Johnson is a member of two protected classes as a black female. Prong (4) is not disputed.

####   1.   *Adverse Employment Action*

Chipola argues that prong (2), an adverse employment action, is not satisfied because her kitchen work and other alleged mistreatments did not amount to an

6

adverse employment action. Johnson responds that she was terminated, which was indisputably an adverse employment action, and furthermore, her hours were reduced and she had to work weekends, and had to work beyond her medical restrictions.

To be an ultimate employment action, an action must be an ultimate employment decision or meet some threshold level of substantiality. *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). That level of substantiality is not well defined, but must be objectively serious and tangible enough to alter the employee's compensation, terms, conditions, or privileges of employment. *Id.* at 617.

Johnson cites no case law and makes no meaningful legal argument to support her bald assertion that she "experienced other qualifying acts of adverse employment action." (Doc. 38 at 12). Rather, it seems that the assignment to kitchen duty (since she could not perform her normal work tasks) and the minor changes to hours and schedule do not rise to the level of substantiality required to constitute an adverse employment action in context of race and gender discrimination. As Johnson has not made any meaningful argument to the contrary, further analysis is not warranted.

Prong (2) is, however, as Johnson properly notes, satisfied by her termination, so I will continue the analysis solely in the context of her termination.

### 2. *Less Favorable Treatment*

The parties also dispute Prong (3), whether Chipola treated similarly situated employees who are not members of Johnson's classes more favorably. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. *Id.*

Johnson has pointed to absolutely no evidence of any similarly situated employees, who are not members of her class, being treated more favorably. That is, she has not shown any situation in which a white or male employee was not fired as a result of taking the wrong lunch break or otherwise being accused of walking off the job or some other terminable offense. Rather, Johnson has only pointed to employees of different races who received different treatment in being accommodated after workplace injuries. This evidence is irrelevant, as I have already determined that Johnson did not suffer any adverse employment action other than her termination. Instead, the only available evidence, produced by

Chipola, shows that Chipola recently fired a white male and two white females for abandoning their jobs—the same offense that Johnson was accused of committing. (*See.* Doc. 36-6 at 3).

I further note that even if Johnson had suffered an adverse employment action because of the reduction and change in hours and the different duties, she would still fail to show that she was treated differently from similarly situated employees outside her protected classes. First, she has used two women as examples of people who were treated more favorably than she, directly contradicting her gender discrimination claims. Second, Johnson has failed to sufficiently describe how the other employees to whom she—Williams, Welch, and Edenfield—are similarly situated to her, and how their post-injury work assignments were better suited to their specific medical recovery plans than was Johnson's. Rather, Johnson's only descriptions of these individuals, (*see* Doc. 38 at 9-10; 11-12), are vague and are insufficient to convince a jury that these individuals were treated more favorably than she was after suffering a workplace injury.

Johnson has therefore failed to establish a prima facie case for discrimination, and her claims fail as a matter of law. No reasonable juror could believe that she was terminated because of her race or gender because she wholly

9

failed to produce any evidence that other similar employees who were not members of a protected class were not fired for similar conduct.

### b.   *FMLA Interference (Count III)*

Johnson next claims that Chipola interfered with her FMLA rights. To prove FMLA interference, an employee must demonstrate that she was denied a benefit to which he was entitled under the FMLA. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008). However, Johnson has not pointed to any benefit to which she was entitled. She claims only that Chipola "did not discuss the availability of FMLA leave" with her, (Doc. 38 at 13), but does not cite any authority for the proposition that Johnson had a duty to discuss FMLA options with her. Rather, the FMLA only states that "an eligible employee shall be entitled to [leave]." 29 U.S.C. § 2612(a)(1). There does not appear to be any affirmative duty for an employer to provide her with specific notice of her FMLA rights after suffering a workplace injury, and Johnson has not so much as attempted to point to one.

Because Johnson has wholly failed to point to any FMLA benefit that she was denied, her claim fails as a matter of law.

## IV.　CONCLUSION

I therefore find that Johnson has failed to produce sufficient evidence to establish a prima facie case for race and gender discrimination. Further, her FMLA claim does not appear to be recognized under established law.

The relief requested in Defendant's Motion for Summary Judgment (Doc. 130) is **GRANTED.** Claims I, II, and III are **DISMISSED WITH PREJUDICE**. Because the federal question claims are dismissed, I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims, which are **REMANDED** to state court. The Clerk is directed to close the case.

**ORDERED** on November 26, 2014.

　　　　　　　　　　　　　　　　　**/s/ Richard Smoak**
　　　　　　　　　　　　　　　　　**RICHARD SMOAK**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**